UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL JEFFREY MARLIN, <br>     Plaintiff, <br>     v. <br> WILLIAM KNIPP, <br>     Defendant. | Case No. 12-cv-04776-JD <br><br> **ORDER DENYING HABEAS PETITION** |

**INTRODUCTION**

Petitioner Michael Jeffrey Marlin, a state prisoner currently in custody at Mule Creek State Prison in Ione, California, seeks federal habeas relief under 28 U.S.C. § 2254. Petitioner is represented by counsel.

Petitioner's two main claims for habeas relief are both tied to the absence of his mother at his trial. At trial, petitioner took the stand and testified on his own behalf. He did not deny that he shot and killed the victim, James "Jimmy" Redenius, but Marlin argued that the killing was not murder, because he had acted in defense of himself and his mother, Kelly Marlin.

In the federal habeas petition that is now before the Court, Marlin claims that the prosecutor made statements during closing argument that improperly commented on the absence of Ms. Marlin at his trial. Petitioner also claims that the appellate court improperly upheld the trial court's denial of his new trial motion, which he made when his mother later came forward, after his conviction but prior to sentencing. Petitioner makes a third and final claim that the state court misapplied state sentencing laws -- applying two sentences for what he contends is the same act -- in a manner that is cognizable on federal habeas review.

1   After carefully considering the parties' written briefs and oral arguments at the hearing, the
2   record and governing law, the Court denies the petition.

**BACKGROUND**

Petitioner was sentenced to a total sentence of 48 years to life after being found guilty of second degree murder, first degree burglary and being a felon in possession of a firearm. In his direct appeal, petitioner raised the same three grounds that he argues on his current petition before the Court, but the California Court of Appeal affirmed in full the trial court's judgment in a reasoned opinion. *See People v. Marlin*, No. A123166, 2011 WL 721458 (Cal. Ct. App. March 2, 2011) (*see* Respondent's Exhibit C). Marlin sought further review by the California Supreme Court, but his petition for review was denied without comment. The following underlying facts are those that are relevant to the issues before the Court, and they are drawn from the California Court of Appeal's opinion, unless otherwise noted.

Petitioner Marlin's conviction and imprisonment arise out of the shooting and killing of a man named James Redenius at Redenius's home in Willits, California on December 16, 2007. Marlin admitted to the shooting and killing, but he testified that it was in defense of his mother, Kelly Marlin. (As did the California Court of Appeal, the Court will refer to Ms. Marlin as "Kelly," for the sake of clarity.)

Marlin and Kelly had encountered Redenius four days before the shooting, on December 12, 2007, when Marlin and Kelly were at Al's Redwood Room for karaoke night. Sometime after midnight, while Marlin was paying their bill, Kelly stepped outside and saw Redenius punching his pregnant girlfriend in the face. Kelly later told Marlin that when she tried to intervene, Redenius "grabbed her by the throat, threw her to the ground, and started kicking her in the face." 2011 WL 721458, at *1. Upon running outside at the news that "some ladies just got beat up," Marlin found that his mother's "'face was all swollen, . . . she had a bloody chunk of skin out of her nose, [and] she had scrapes on her forehead' and elbows." *Id*. She was crying and very upset. Willits Police Officer Mark Heaney arrived at about 2:00 a.m., and he spoke to Marlin at the scene. Marlin, "who was very angry, said if the police did not catch Redenius, '"we're going to get him," or something to that nature.'" *Id*., at *2.

Redenius's reputation for violence was well known in the local community, as Marlin learned after Redenius's attack on Kelly at Al's Redwood Room. Among other things, a sister of Redenius's ex-wife told Marlin that "throughout their marriage he beat the shit out of her and threatened to kill her. There w[ere] police reports about it. The police never really helped her out." *Id.* The ex-wife also "had a restraining order against" Redenius. *Id.* A man named Trevor told Marlin that Redenius was "a bad guy" and that "most people don't testify against him because he goes after them." *Id.* At trial, a 50-year-old woman who lived across the street from Redenius testified that he had once "punched her" when she refused to pick up trash scattered by garbage collectors. *Id.* "She contacted police, but no action was taken against Redenius." *Id.* A man named John Simmons was also "headbutted" by Redenius at a bar after refusing to fight him, and when he subsequently filed a police report, no charges were filed against Redenius. *Id.*

On December 16, 2007, four days after the initial encounter at Al's Redwood Room, Kelly and Marlin went out to a pizza parlor in Willits. They spent about four to five hours there, where Marlin "drank 'quite a bit' -- 'at least eight beers.'" *Id.*, at *2. They left in Kelly's car, with Kelly driving, to deliver a pizza to Marlin's brother. "Marlin did not know where Redenius lived, but Kelly pointed out his home." *Id.*

For the key events that came next, the Court quotes the relevant portion of the Court of Appeal's opinion in full:

> Marlin "jumped out of her car and . . . ran up to the door." He began pounding on the door with his fist, and kicked the door once. Through a window in the door, Marlin saw a man walk toward the door, but he did not open it. In the meantime, Kelly pulled her car behind Marlin. She jumped out of the car and screamed "'Mike, get in the car now.' "Marlin started to get in the car, when Redenius came out the front door. Kelly went up to Redenius and said "'I'm sorry, we have the wrong place. [¶] . . . [¶] It's a mistake.' "Marlin saw Redenius "start to attack" Kelly, and she was "thrown to the ground."
>
> When Marlin saw his mother thrown to the ground, he reached in the car and "grabbed out her pistol," which was in a bag behind the seat. Marlin knew the gun was there that evening because Kelly had told him. Marlin did not know where or how she got the gun, how long she had it, or when he found out she had it. After he grabbed the pistol, he saw Redenius "attacking" his mother, who was on the ground on her back. Redenius then pointed a gun at Marlin and fired.

3

> Marlin "took a shot at him." He did not know if he fired the first shot or not, but both guns fired. Redenius turned and ran inside. Marlin followed, "right on his tail." Redenius turned left down a hallway, and Marlin stopped at the corner. He pointed the gun and looked directly down the hallway. Redenius turned around, pointed his gun at Marlin, and ducked behind and slammed a door. Marlin fired five shots into the door as Redenius was shutting it "[b]ecause he had a gun and I didn't want to get shot."
>
> After emptying the gun of bullets, Marlin left the residence. His mother and the car were no longer outside. At that point, Marlin did not know his shots had hit Redenius. He "took off," and walked all night. After contacting his brother the next day, Marlin turned himself in.

2011 WL 724158, at *2-3.

Officer Heaney, the same officer who had responded to the incident at Al's Redwood Room, arrived at the shooting scene. "He and Kelly recognized each other, and Kelly told him, 'My son did it,' before Heaney asked her anything." *Id*. at *3. The trial court ruled that this out-of-court statement was admissible as an excited utterance. *See* 1 RT 157 ("And my ruling . . . is I'm going to allow the initial statement of Ms. Marlin to the officer where she basically volunteered, Officer Heaney, my son did it. That's a kind of a classic spontaneous declaration. It's not in response to a question. It's just a spontaneous utterance.").[1]

Not admitted at trial, however, were additional statements of Kelly's that were the subject of testimony at the preliminary hearing. Another officer who had responded to the scene, Officer Jacob Donahue, testified that he interviewed Kelly at the Willits Police Department sometime after the shooting. 1 CT 49. He testified that Kelly told him that "[w]hen she approached the house and after saying, 'We are sorry. It's a mistake,' Jimmy [Redenius] told them to leave and ended up pushing Kelly Marlin backwards. It sounds like she [] ended up pushing -- I am sorry -- Jimmy ended up pushing Kelly backwards away from his front door." 1 CT 55. When asked about an injury to Kelly's knee which Officer Donahue had photographed and believed to be "fresh," he did not recall her telling him that she had received it when Redenius pushed her to the ground. 1 CT

---

[1] As does petitioner, the Court cites to the Reporter's Transcript as "RT" and the Clerk's Transcript as "CT." Both were lodged by respondent in support of respondent's answer to the habeas petition. *See* Dkt. No. 10.

4

83.  He did, however, recall that his report had noted that "Kelly thought Redenius might have knocked her down when he shoved her away from her (sic.) residence and that's how she got the abrasion that appeared fresh on her left knee."  1 CT 83-84.

Deputy Sheriff Jerry Dean Verdot also responded to the scene.  Redenius told Verdot that "a man he had never seen before came to his door and they began arguing.  Redenius told the man to 'get the hell out of there,' and the man 'pulled out a gun and shot him.'"  2011 WL 721458, at *3.  Redenius "went through his house, out the back window, and to a neighbor's house to get help."  Id.  He was pronounced dead at the hospital at 8:40 p.m. that evening.

Kelly did not testify at petitioner's trial.  "At trial, defense counsel represented to the court he had been unable 'to locate [Kelly] for trial.'"  2011 WL 721458, at *7.  After his conviction, Marlin made a motion for a new trial on the basis of newly discovered evidence -- "his mother, who could not be located during trial, had 'c[o]me forward to testify' and corroborate Marlin's testimony."  Id., at *6.  But the trial court denied the motion.

Petitioner filed this federal habeas petition on August 24, 2012.  Dkt. No. 1.  His petition presents three grounds:  (1) that the prosecution "violated due process" when it urged the jury to convict because the defense had "failed to produce corrob[orating] evid[ence] that the state knew existed but was unavailable and inadmissible"; (2) that there was a due process error arising from the trial court's failure to "grant a new trial based on new evidence from Ms. Marlin that Redenius not only attacked her, but fired a gun, thus corrob[orating] that" petitioner acted in self defense or defense of another; and (3) that there was a due process violation "arising from a deprivation of a state law entitlement when" the trial court "sentenced consecutively on [the] burglary count, in derogation [of] Penal Code section 654."  Id. at 5-6.  Each of these grounds is discussed below.

**GOVERNING STANDARD**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs federal habeas review and sets a very high bar for petitioners to cross.  Under AEDPA, a federal court may not grant a habeas petition for any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim resulted in (1) a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme

Court of the United States," or (2) a decision that was based on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Under the "contrary to" clause in Section 2254(d)(1), "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "[A]s the statutory language makes clear," under Section 2254(d)(1), the "source of clearly established law" is restricted to the Supreme Court's jurisprudence. *Id*. "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,' 28 U.S.C. § 2254(d)(1)" and it "therefore cannot form the basis for habeas relief under AEDPA." *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012).

The "unreasonable application" language in Section 2254(d)(1) has also been tightly construed. Under controlling precedent, "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Harrington v. Richter*, 562 U.S. 86, 785 (2011) (emphasis in original; quoting *Williams*, 529 U.S. at 410). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Id*. (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (citing 28 U.S.C. § 2254(e)(1)). And for claims brought under Section 2254(d)(2), a state court decision "adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Id*.

The state court decision to which Section 2254(d) applies is the "last reasoned decision" of the state court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991). Here, that is the California Court of Appeal's opinion. And although petitioner argues that deference is not due to that opinion because the state court "did not attempt to identify or discuss the correct federal rules,"

6

1  Dkt. No. 27 at 18, that is not correct. "When a federal claim has been presented to a state court
2  and the state court has denied relief, it may be presumed that the state court adjudicated the claim
3  on the merits in the absence of any indication or state-law procedural principles to the contrary."
4  *Harrington*, 131 S. Ct. at 784-85. A state court decision need not cite to decisions of the Supreme
5  Court, "indeed, [avoiding the pitfalls under AEDPA] does not even require *awareness* of [the
6  Supreme Court's] cases, so long as neither the reasoning nor the result of the state-court decision
7  contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002) (emphasis in original).
8      If, taken collectively, this standard under Section 2254(d) "is difficult to meet, that is
9  because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a
10  complete bar on federal court relitigation of claims already rejected in state proceedings."
11  *Harrington*, 562 U.S. at 786.

## DISCUSSION

### I. PROSECUTORIAL MISCONDUCT

Petitioner's first claimed ground for habeas relief takes issue with the fact that, in closing argument, the prosecutor "repeatedly urged the jury to reject petitioner's defense of provocation, defense of another and self-defense because it was not corroborated, not even by his own mother." Dkt. No. 27 at 19. Petitioner contends that this was prosecutorial misconduct that violated his right to due process, and that the state court's conclusion to the contrary "constituted an unreasonable application of clearly established federal law as articulated by the United States Supreme Court" under Section 2254(d)(1). *Id*. at 29.

In her closing argument,[2] the prosecutor made the following statements:

> We don't have too many eyewitness[es] to what happened when James Redenius was killed on his front porch. [¶] Only one person has come in here and said what he saw, but we received evidence in other ways.
>
> . . .

---

[2] Petitioner has referred to the prosecutor as a "he" throughout his briefing and at the hearing on this petition, but a review of the trial transcript shows that the prosecutor was "Ms. Ravitch," a woman.

7

> The only evidence you've received that would support any type of legal justification has come from one source, and one source alone. The defendant, in his testimony.
>
> . . .
>
> [Kelly] was on her back with her hands up and her knee was bleeding and the defendant was leaning over her holding a small, black object when Mike Marlin fired the fatal shot. That's what you just heard. That's why he's not guilty. But let's take it apart for a minute. Okay.
>
> Before you accept any fact as true, you have to consider the source. On her back with her hands up. What's the evidence of that? Not in the spontaneous statements that she makes to the people she runs to hysterical telling them -- telling them that her son just killed this man, not in the statements of the victim as he's collapsing, dying on his neighbor's porch. Where are we getting that fact that she's on her back with her hands up? Him, the defendant.
>
> . . .
>
> Well, her knee is bleeding in this photograph. That's indisputable. Absolutely true, to borrow one of [defense counsel's] remarks. But what do we know about that happened? It came from the defendant. Oh, we know that the victim threw her down because that's what he does. That's his MO. He throws people to the ground. Well, we didn't hear it from the person whose knee was bleeding. And we didn't hear it from the person who allegedly did.

7 RT 1250, 1256, 1294-14 - 1294-15.

In its opinion, the California Court of Appeal began its analysis of this issue by noting that "[a] prosecutor's conduct violates the Fourteenth Amendment to the federal Constitution when it infects the trial with such unfairness as to make the conviction a denial of due process." 2011 WL 721458, at *3 (citing *People v. Morales*, 25 Cal. 4th 34, 44 (2001)). The California Court of Appeal concluded, however, that the statements were not misconduct and instead constituted a "fair comment on the evidence" for two primary reasons. First, the Court of Appeal reasoned that the challenged statements were not improper under state law because "the claimed corroborating evidence [*i.e.*, Kelly's excluded statements to Officer Jacob Donahue] in this case was not improperly excluded -- the parties do not dispute it was hearsay not falling within any exception." *Id.* at *5. Second, the Court of Appeal based its conclusion on its finding that the "prosecutor in this case did not argue a known falsehood to the jury," because "Kelly's excluded statement did not corroborate Marlin's testimony at trial." *Id.*, at *6.

8

On this federal habeas petition, Marlin asserts that the state appellate court's conclusion constituted a violation of Section 2254(d)(1) because it was an unreasonable application of cases such as *Miller v. Pate*, 386 U.S. 1, 7 (1967); *Napue v. Illinois*, 360 U.S. 264, 269 (1959); *Graves v. United States*, 150 U.S. 118, 121 (1893) and *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). *See* Dkt. No. 27 at 20-21. That is not correct.

*Graves*, 150 U.S. 118 (1893), is the case that comes closest to being applicable. But in that case, while the Supreme Court held that the district attorney's closing argument to the jury commenting upon the absence of the defendant's wife was improper, it made clear that this holding rested in large part on the fact that in that case "the wife was not a competent witness, either in behalf of or against her husband. If he had brought her into court, neither he nor the government could have put her upon the stand . . . ." 150 U.S. at 121. *See also id.* at 120 ("Had the wife been a competent witness, the comments upon her absence would have been less objectionable."). Here, there is no suggestion that Kelly would have been incompetent as a witness; indeed, the very reason for her importance to the case is that she was the only other surviving eyewitness to the shooting, other than petitioner himself, and petitioner sought a new trial for the very purpose of introducing her testimony.

The other cases cited by petitioner -- *Miller*, *Napue* and *Darden* -- are inapposite, and do not support petitioner's claim for relief. *Miller* stands for the proposition that the prosecution cannot "deliberately misrepresent[] the truth," 386 U.S. at 6, and *Napue* for the proposition that the prosecution further cannot fail "to correct the testimony of [a] witness which he knew to be false." 360 U.S. 265. Critically, as petitioner conceded at the hearing, there was nothing "literally false" about the prosecutor's statements in this case.

*Darden* also does not help petitioner, as it addresses a prosecutor's comments in closing argument that included references to the defendant as "an animal." 477 U.S. at 180. The Supreme Court, summarily noting that "[t]hese comments were undoubtedly . . . improper," went on to examine whether these improper comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* at 181. But here, the Court need not reach the question articulated in *Darden*. That is because petitioner has failed to establish that the California

9

1  Court of Appeal's conclusion that the prosecutor's statements were not improper were "contrary
2  to, or involved an unreasonable application of, clearly established Federal law, as determined by
3  the Supreme Court of the United States." Petitioner's first claim for relief must consequently be
4  denied.

## II. DENIAL OF NEW TRIAL MOTION

Petitioner's second ground for habeas relief raises a challenge under both Section 2254(d)(1) and (d)(2) of AEDPA.

On October 27, 2008, petitioner filed a motion for new trial in the trial court, arguing, among other things, that he was entitled to a new trial on the basis of "newly discovered evidence" because his mother, who "did not testify at trial" and "was physically unavailable to the defense," had "been located and is now available to the defense." 2 CT 430. The trial court denied the motion, ruling as follows:

> As to the newly discovered evidence issue, I think it can't be said that the defendant's own mother, who was the other eyewitness to the offense, her lack of presence at the trial could be considered evidence that could not with reasonable diligence have been discovered. . . . [¶] And again, as to the other witnesses who were not available, it appeared to be a decision on her part or some -- the defendant's part or somebody's, that they'd be better off without her presence as the only eyewitness. She was not present for the trial in spite of efforts by the prosecution to find her. And I think you don't get it -- another bite at it once the trial turns out to be unsuccessful with a strategy of the eyewitness not being present. So as to the new evidence and the medial records issues, the motion is denied.

8 RT 1372-73.

The Court of Appeals upheld this denial, concluding that "[w]ithout any evidence in the record regarding reasonable effort[s] to produce all his evidence at the trial, we cannot say the trial court abused its discretion in denying the motion for new trial." 2011 WL 721458, at *7 (internal quotation marks and citation omitted). Marlin contends that "[t]his finding is not supported by substantial evidence[,] and the California Court of Appeal's rejection of this claim was contrary to and an unreasonable application of clearly established Supreme Court law." Dkt. No. 27 at 35.

Taking up petitioner's Section 2254(d)(2) challenge first, that argument fails for a number of reasons. As a preliminary matter, it is not clear that the Court of Appeal made any

10

"determination of the facts" that can properly be the subject of challenge under Section 2254(d)(2). The Court of Appeal appears merely to have observed that the record was lacking in evidence showing that petitioner had put forth "reasonable effort[s] to produce all his evidence at the trial" such that the trial court could be said to have abused its discretion in denying his new trial motion. 2011 WL 721458, at *7.

A more relevant analytical approach is that articulated by our Circuit that a habeas petitioner does not show an unreasonable determination of the facts under Section 2254(d)(2) by merely disagreeing with the state court's interpretation of the record but not pointing to any material fact that the court failed to consider in reaching its determination. *See DeWeaver v. Runnels*, 556 F.3d 995, 1006-07 (9th Cir. 2009). That deficiency exists here. In its opinion, the California Court of Appeals considered the defense counsel's representation that he had been unable "to locate [Kelly] for trial," the prosecutor's statement that she "had made extensive efforts to find Kelly 'throughout the state,'" Kelly's declaration in support of the motion for new trial as well as the letter Kelly sent to the trial court in regard to sentencing, which "was not signed under penalty of perjury." *Id.*, at *7 and n.9. In his petition to this Court, Marlin has failed to point out any material fact that the state appellate court failed to consider in affirming the trial court's denial of his motion for a new trial.

Petitioner's claim that the same conclusion constituted a violation of Section 2254(d)(1) must also be denied. Petitioner's reply brief makes clear that the primary legal basis for his challenge is *People v. Martinez*, 36 Cal.3d 816, 825 (1984). *See* Dkt. No. 27 at 42-48 (citing *Martinez* throughout). But *Martinez* is a California Supreme Court case, which obviously cannot serve as the source of "clearly established Federal law" under 28 U.S.C. § 2254(d)(1). Petitioner has failed to identify any other U.S. Supreme Court case that the California Court of Appeals can be said to have unreasonably applied.

Consequently, petitioner's federal habeas claim based on the trial court's denial of his new trial motion (and the appellate court's affirmance thereof) must also be denied.

### III. SENTENCING ERROR

Petitioner's final claim is also insufficient to carry the day on his federal habeas petition. Petitioner claims that the state court made a sentencing error in applying California Penal Code Section 654. The claimed basis for the error is that California Penal Code Section 654 "provides that even though an act violates more than one statute and thus constitutes more than one crime, a defendant may not be punished multiple times for that single act." Dkt. No. 27 at 49-52. Petitioner argues that the trial court erroneously found that his "intent and objective in count 1 (murder) was separate from, rather than incidental to, his intent and objective in count 2 (burglary)," thereby imposing a sentence for the burglary consecutive to his sentence for the murder which violated Penal Code Section 654's "prohibition against double punishment." *Id.*

Marlin does not dispute that his "sentencing claim is premised on a violation of a state law." *See* Dkt. No. 27 at 50. He asserts, however, that the claim is nevertheless "cognizable on federal habeas review" because "[a] sentencing error may violate due process if the state court misapplied its sentencing laws in an arbitrary, capricious, or fundamentally unfair manner." *Id*. (citing *Richmond v. Lewis*, 506 U.S. 40 (1992)).

This argument, however, rests on a misreading of *Richmond*. There, the Supreme Court made clear that "the question to be decided by a federal court on petition for habeas corpus is not whether the state sentencer committed state-law error . . . ." 506 U.S. at 50; *see also id*. at 51 ("federal habeas corpus relief does not lie for errors of state law.") (citing *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). Although in *Richmond*, the Court went on to state that "the federal, constitutional question" was whether the Arizona state courts' reliance on a "narrowed aggravating factor" was "so arbitrary or capricious as to constitute an independent due process or Eight Amendment violation," this was because the Court had previously ruled that the statutory aggravating factor at issue was unconstitutionally vague. *See id*. at 50, 46 ("Arizona's 'especially heinous, cruel or depraved' factor was at issue in *Walton v. Arizona*, [497 U.S. 639 (1990)]. As we explained, 'there is no serious argument that [this factor] is not facially vague.'").

As the Supreme Court has repeatedly emphasized, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Petitioner's arguments regarding his sentencing establish, at best, that the state court may have misapplied state sentencing law. But he has identified no U.S. Supreme Court case that supports an argument that he was in this case deprived of a "liberty interest" which "the Fourteenth Amendment preserves against arbitrary deprivation by the State." *Hicks v. Oklahoma*, 47 U.S. 343, 346 (1980). Because petitioner has failed to identify any Supreme Court case that the state appellate court can be said to have unreasonably applied in connection with his sentencing, his habeas claim on this ground must be denied.[3]

## CONCLUSION

The record in this case tells a sad story of violence and retribution in a small California town. While not germane to the resolution of the petition, the Court is struck by the apparent failure of local law enforcement in Willits to deal with repeated reports of violent behavior by an individual in the community. Had law enforcement acted with greater resolve and direction, it is possible that the tragic events in this case would not have happened. But on the record that is before the Court, and under the stringent rules governing federal habeas petitions, the Court cannot conclude that the writ should issue here. Consequently, Marlin's habeas petition is denied.

The Court also denies a certificate of appealability pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases. Petitioner has failed to make a "substantial showing of the denial of a constitutional right" on any of his claims. *See* 28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (explaining that an applicant satisfies this standard where he or she shows that reasonable jurists could find the issues debatable or that the issues are "adequate to deserve encouragement to proceed further") (internal quotation omitted).

---

[3] At the hearing, petitioner's counsel averred that Marlin's sentencing claim was a 2254(d)(1) claim only. Even if construed as a (d)(2) claim, the Court must presume correct any determination of a factual issue made by a state court, and petitioner has failed to rebut the presumption of correctness by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

1     The Clerk of the Court is directed to enter judgment and close the file.

2     **IT IS SO ORDERED**.

3 Dated: October 21, 2014

_____

JAMES DONATO
United States District Judge